UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALBRIDGE ALDINGER COMPANY,
MIDWEST BUILDING SUPPLIES, INC.,
and JOSEPH SHELTON,

        Plaintiffs-appellants,

v.

CITY OF DETROIT,

        Defendant-appellee.
_____/

District Court No. 07-11736
Court of Appeals No. 07-1973
Hon. John Feikens

## OPINION ON FEDERAL JURISDICTION ON REMAND

Walbridge Aldinger Company, Midwest Building Supplies, Inc., and Joseph Shelton ("Plaintiffs") sued the City of Detroit and sought injunctive relief because of an unsuccessful bid to build Oakwood CSO Control Facility and Pump Station. This Court granted Detroit's Motion for Summary Judgment, ruling that Plaintiffs failed to demonstrate that they had standing to bring the suit. Plaintiffs appealed this decision. The Sixth Circuit Court reversed and remanded to this Court its grant of summary judgment, stating that it was "not convinced . . . that sufficient facts have been adduced to determine the existence of federal subject matter jurisdiction." Walbridge Aldinger Co. v. City of Detroit, 2008 WL 4613545, at *1 (6th Cir. 2008).

In response to the Sixth Circuit's remand, this Court issued an Order for Briefing, included as Exhibit A, which cites relevant case documents and directs the parties to comment on how the contents of these documents affect this Court's jurisdiction. The parties, however, did not submit briefs and instead stipulated to a dismissal of Plaintiffs' Complaint. Accordingly,

on December 17, 2008, this Court noted the stipulation, but in view of the parties' refusal to respond to this Court's Order for Briefing, and thus to make this a dispositive matter, this Court took up the Sixth Circuit's remand, made findings of fact, and concluded that jurisdiction exists.

## FACTUAL FINDINGS

On December 29, 2006, Defendant advertised for bids on Contract No. PC-755. PC-755 would provide for the reconstruction and expansion of the Oakwood CSO Control Facility and Pump Station, including the renovation and refurbishment of existing sanitary facilities, and the construction of a new storm and sanitary pump station and support facilities. The bids were subject to Defendant's purchasing ordinance, Detroit City Code § 18-5-1, which requires the City to award a contract to the "lowest responsible bidder." The lowest bidder is determined after readjusting a bid by a two-percent equalization credit if a Detroit-based business submitted that bid or if that bid includes a Detroit-based joint venture. Detroit Code § 18-5-2. Additionally, the bid solicitation included: (1) a stated goal of including 30% Detroit-based businesses and Detroit-headquartered businesses in PC-755; (2) a requirement that bidders include completed subcontractor forms that identified all Detroit-based business and Detroit-headquartered businesses with whom the bidder intended to subcontract; and (3) the City's express reservation of the right to waive "any non-conformances."

The City received only two bids on the project. Walbridge Oakwood JV ("Walbridge"), a joint venture between Midwest Building Supplies, Inc., and Walbridge Aldinger Co., submitted a bid of $159,931,000. D'Agostini & Sons, Inc./Lakeshore Engineering, Inc. Joint Venture ("D'Agostini") submitted a bid of $154,507,025. Both bidders were joint ventures that included Detroit-based or Detroit-headquartered businesses, but only Walbridge submitted a completed Detroit-based subcontractor form. Because Walbridge alone submitted the subcontractor form, it

received two-percent equalization credit, lowering its bid to $156, 732,380. However, this revised amount still exceeded the amount of D'Agostini's $154,507,025 bid. As a result, the City found D'Agostini's bid lower. Walbridge asked the City to reconsider its decision. It argued that the City should have rejected D'Agostini's bid as non-responsive because D'Agostini had: (1) failed to submit a completed subcontractor form; (2) failed to provide a joint venture agreement as required; and (3) provided a defective bid bond. In a letter dated April 5, 2007, Detroit's purchasing director informed Walbridge that the D'Agostini bid was responsive and that the non-conformances in the bid were minor and would be waived by Detroit. Walbridge then submitted a bid protest on April 9, 2007, raising the same issues it set forth in its earlier request for reconsideration. The City, in its response, reiterated that the non-conformances in D'Agostini's bid were not enough to cause its rejection. On April 17, 2007, Detroit declared D'Agostini's bid the lower responsive bid, but required D'Agostini to "demonstrate responsibility" by providing information to support its bid. Plaintiffs filed their Complaint on April 19, 2007.

## ANALYSIS OF FEDERAL JURISDICTION

Paragraph 6 of Plaintiffs' Complaint states that the claims "asserted herein by Plaintiffs regarding the contracting practices of the City's Water & Sewerage Department fall under the ambit of the Special Administrator's responsibility by various Orders of this Court relating to *United States v. City of Detroit*, Civil Action, 77-71100." Indeed, the reconstruction and expansion of the Oakwood CSO Control Facility and Pump Station—the subject matter of the contract at issue in the Complaint—is necessary to the City's compliance with federal water pollution standards, and falls within this Court's oversight authority pursuant to the Second Amended Consent Judgment filed August 3, 2000, case number 77-cv-71100.

"In order to comply with the [Clean Water Act], an individual point-source discharger must obtain and adhere to the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued by the [Environmental Protection Agency] or an EPA-authorized state agency." Kentucky Waterways Alliance v. Johnson, 540 F.3d 466, 470 (6th Cir. 2008) (citing 33 U.S.C. § 1342(a)-(d)). NPDES Permit No. 0022802 (the "Permit"), dated October 3, 2007, sets forth a compliance schedule for the City's compliance with the Clean Water Act. Part I.A.13.d.3 of the Permit states:

> For untreated combined sewer overflows from Outfall 082 via the Oakwood Pump Station, the permittee shall provide facilities to either eliminate or provide adequate treatment of combined sewage discharges to protect Public Health. The permittee shall implement the Final Long-term Combined Sewer Overflow Control Program for Outfall 082, the Oakwood Pump Station, in accordance with the following schedule.
>
> (a) On or before September 1, 2007, and in accordance with the approved final plans and specifications, the permittee shall commence construction of the CSO control Facilities for discharges from Outfall 082.
>
> (b) On or before December 1, 2010, the permittee shall complete construction and place into operation the CSO control facilities for discharges from Outfall 082 and shall be subject to the Retention Treatment Facility Discharge Limitations and Monitoring Requirements contained in the Limitations and monitoring requirements in effect during other periods of discharge contained in Part I.A.5 of this permit.
>
> (C) The permittee shall conduct a Project Performance Certification (PPC) Program to certify that the CSO control facilities for discharges from Outfall 082 were constructed in accordance with the approved Basis of Design criteria and the approved plans and specifications. After December 1, 2010, discharges or raw untreated sewage from Outfall 082 are prohibited. The permittee shall conduct the PPC Program in accordance with the [compliance schedule listed in Part I.A.13.d.3.c.]"

Thus, the upgrade of the Oakwood CSO facility is specifically listed as a necessary step in achieving compliance with the Permit.

This Court has the jurisdiction to demand compliance with the Permit. This power stems from two sources. The Second Amended Consent Judgment grants this Court jurisdiction over

the enforcement of NPDES Permit No. 0022802, including the upgrade of the Oakwood CSO facility and claims by those in privity with the MDEQ for the enforcement of discharge limitations and compliance dates. The Second Amended Consent Judgment states:

> The court notes that in its response to the Committee's report, [Detroit Water and Sewerage Department] has identified a number of actions it has taken and intends to take to bring the [Waste Water Treatment Plant] into sustained compliance. It has also stated that it is the mission of the City of Detroit to operate and maintain its wastewater treatment plant in compliance with all applicable State and Federal laws, including the Amended Consent Judgment and the NPDES permit for the benefit of the public in general and specifically for the benefit of the customers which it serves, both inside and outside the City of Detroit.

Additionally, 33 U.S.C. § 1319 gives this Court jurisdiction to "restrain violations . . . and to require compliance" on any violation for which the Administrator is authorized to issue a compliance order. Because the Administrator is authorized to issue a compliance order on the Permit under 33 U.S.C.A. § 1319, this Court has jurisdiction to restrain violations of and to require compliance with the Permit.

Thus, this Court has jurisdiction over compliance with the Permit. The timely construction of the Oakwood CSO Control Facility and Pump Station is a necessary step in ensuring compliance with the Permit. This Court has jurisdiction over the Plaintiffs' Complaint because a resolution to the conflict between Plaintiffs and the City must be resolved in order for work required by the permit to move forward.

For these reasons, I hold that this Court has federal subject matter jurisdiction over this case.

Date:   December 24, 2008                    s/John Feikens
                                             United States District Judge

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on December 29, 2008, by U.S. first class mail or electronic means.

s/Carol Cohron
Case Manager

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**WALBRIDGE ALDINGER COMPANY,**
**MIDWEST BUILDING SUPPLIES, INC.,**
**and JOSEPH SHELTON,**

       **Plaintiffs,**

                                                        **Civil No. 07-11736**
                                                        **Hon. John Feikens**

       **v.**

**CITY OF DETROIT,**

       **Defendants.**
_____/

## ORDER FOR BRIEFING

Before me is an Opinion from the United States Court of Appeals for the Sixth Circuit, case number 07-1973, in which a Summary Judgment that was entered in this court was reversed, and the case was remanded for a determination whether federal question jurisdiction exists.

In order to address this remand, there are set forth herein documents which are central to a determination as to jurisdiction.

A recitation of documents begins with reference to the Complaint filed in this court. In it there is a reference to bids that were required for the awarding of a contract that called for the construction of the Oakwood CSO Control Facility and Pump Station Project, a project that included renovation and refurbishment of existing sanitary facilities and construction of a new combination storm and sanitary pump station and support facilities.

To fully analyze the issue of jurisdiction, reference is also made to the Second Amended

**Consent Judgment filed August 3, 2000. It required that a Comprehensive Plan and Program Update be filed. In a report to the court, dated August 1, 2002, the Director of Detroit Water and Sewerage Department, on page 13 of 20, reference is made to Contract PC 704 providing for the construction of a new concrete pumping station at the Oakwood Interceptor. On page 20 of 20 in that report, there is a reference to Contract CS-1281 which provides for the purchase of land for the Oakwood facility. This is referred to as the Long Term CSO Control Plan Phase II Project.**

**On page 4 of the Second Amended Consent Judgment in the third paragraph there is a reference to the NPDES permit:**

> **The court notes that in its response to the Committee's report, DWSD has identified a number of actions it has taken and intends to take to bring the WWTP into sustained compliance. It has also stated that it is the mission of the City of Detroit to operate and maintain its wastewater treatment plant in compliance with all applicable State and Federal laws, including the Amended Consent Judgment and the NPDES permit for the benefit of the public in general and specifically for the benefit of the customers which it serves, both inside and outside the City of Detroit.**

**The NPDES Permit No. 0022802 dated October 3, 2007, on page 31 of 53, Part I.A.13.d.3, sets forth the compliance schedule. It states that since upgrade of the Oakwood CSO facility is specifically listed as a compliance item in the permit, it would appear that DWSD Contract No. PC-755, Oakwood CSO Control Facility and Pump Station is a compliance-related item within the Second Amended Consent Judgment.**

**PC-755 documents address work that is required per Part 1.A.5 of the NPDES permit. An excerpt from Section 00030 of the advertising documents states:**

> **2. Project Description - The Work, Oakwood CSO Control Facility and Pumps Station contract No. PC-755, includes but is not limited to: ...construction of a new combination storm and sanitary Pump Station and support facilities including control building, chemical feed facility, screen facility and odor control building; construction of two 4.5 million**

> gallon CSO Basins and associated influent screen facility and odor control room; construction of a new effluent conduit from the CSO Basins to the O'Brien Drain consisting of one entirely new conduit and a new piece that will connect between the Basins and the existing PS effluent conduit; ...installation of all equipment (process, electrical, mechanical, instrumentation, etc.) called for; relocation of utilities as required; startup and testing facilities and equipment...

Part 1.A.5 lists limits for fecal coliform. In addition, Part 1.A.5.c states:

> The receiving water shall contain no turbidity, color, oil films, floating solids, foams, settleable solids, suspended solids, or deposits as a result of this discharge in unnatural quantities which are or may become injurious to any designated use.

I also attach hereto a document entitled "Scope of Services" which details Project Understanding. The first four pages of that document are sufficient to set out the scope of the project, and it is referred to as Exhibit A.

33 U.S.C. Sec. 1319 sets forth the overall provision as to enforcement. It reads:

> The Administrator is authorized to commence a civil action for appropriate relief, including a permanent or temporary injunction, for any violation for which he is authorized to issue a compliance order under subsection (a) of this section. Any action under this subsection may be brought in the district court of the United States for the district in which the defendant is located or resides or is doing business, and such court shall have jurisdiction to restrain such violation and to require compliance. Notice of the commencement of such action shall be given immediately to the appropriate State.

Page 13 of the Second Amended Consent Judgment as to <u>dispute resolution</u> states:

> Any party may apply to this Court for such further orders, directions and/or relief as may be appropriate under the circumstances.

Under paragraph VIII A. It is stated:

> This Second Amended Consent Judgment is to resolve any and all claims by MDEQ, and others in privity with it, for civil penalties against DWSD for surface water discharge violations and compliance dates of the Permit and the Act that are listed in Attachments A and B and for compliance dates revised in Attachment C.

**Subsection B. states:**

> **Upon entry, this Second Amended Consent Judgment shall supplant and supersede the Amended Consent Judgment, entered on April 25, 1980.**

**A final consideration: since the dispute between the Plaintiff and the City of Detroit must be resolved in order that the work required by the permit can go forward, it appears that this court is empowered to resolve this dispute.**

**Accordingly, counsel for the Plaintiffs-Appellants and for the City of Detroit are hereby ordered to respond to this Order to submit briefing as to the issues raised. Responses as to this Order are required to be made simultaneously by the parties hereto by December 17, 2008. I have set December 22, 2008 at 10:00 a.m. for a hearing in this matter. If additional time is needed, please contact me.**

**IT IS SO ORDERED.**

                                                **s/John Feikens**
                                                **John Feikens, U.S. District Judge**

**Dated: November 18, 2008**

### Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on November 18, 2008, by U.S. first class mail or electronic means.

                                                s/Carol Cohron
                                                Case Manager